IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KERRY R. HAMILTON, Plaintiff, | ) | |
| v. | ) | Case No. 06-680C<br>(Judge Margaret M. Sweeney) |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, DISMISSING THE CLAIMS REMAINING TO BE ADJUDICATED**

OF COUNSEL:
Linda Lipsett

Jules Bernstein
Bernstein & Lipsett
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile
Counsel of Record

Edgar James
James & Hoffman
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Counsel for Plaintiff

**Filed electronically**

June 30, 2008

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. DETERMINATIONS OF THE LAW APPLICABLE TO "TIME WORKED" UNDER FLSA HAS CHANGED SIGNIFICANTLY SINCE ADAMS . . . . . . . . . . . . . . . . . . . . 2

II. THE FEDERAL CIRCUIT'S DECISION IN BILLINGS OBLIGATES THIS COURT TO DEFER TO DOL'S FLSA REGULATIONS UNDER WHICH REQUIRED HOME/WORK DRIVING IS FLSA COMPENSABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III. THE ADAMS CASE DID NOT INVOLVE DIVERSION INVESTIGATORS . . . . . . 13

IV. STARE DECISIS DOES NOT APPLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V. THE DENIAL OF PETITIONERS' PETITION FOR WRIT OF CERTIORARI AND PETITION FOR REHEARING EN BANC IN ADAMS DO NOT CONSTITUTE AFFIRMANCE OF THE FEDERAL CIRCUIT PANEL'S DECISION IN ADAMS . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE

**TABLE OF AUTHORITIES**

**PAGE**

**CASES**

Adams v. United States, 471 F.3d 1321 (Fed. Cir. 2006), reh'g and reh'g en banc denied, 219 Fed. Appx. 993 (Fed. Cir. 2007), cert. denied, 128 S.Ct. 866 (2008) . . . . . . . passim

Aeolus Systems, LLC v. United States, 79 Fed. Cl. 1 (2007) . . . . . . 6

Am. Fed'n of Gov't Employees v. Office of Personnel Management, 821 F.2d 761 (D.C. Cir. 1987) . . . . . . 13

Angelo v. United States, 57 Fed. Cl. 100 (2003) . . . . . . 12

Armour & Co. v. Wantock, 323 U.S. 126 (1944) . . . . . . 8

Atlas Corp. v. United States, 895 F.2d 745 (Fed. Cir. 1990) . . . . . . 1

AT&T Corp. v. Portland, 216 F.3d 871 (9th Cir. 2000) . . . . . . 4, 7

Avenues in Leather v. United States, 423 F.3d 1326 (Fed. Cir. 2005) . . . . . . 16

Bobo v. United States, 37 Fed. Cl. 690 (1997), aff'd, 136 F.3d 1465 (Fed. Cir. 1998) . . . . . . passim

Billings, et al. v. United States, 322 F.3d 1328 (Fed. Cir. 2003), cert. denied sub nom . . . . . . 10, 11, 12

Brown v. Allen, 344 U.S. 443 (1953) . . . . . . 17

Chessman v. Teets, 354 U.S. 156 (1957) . . . . . . 17

Chevron U.S.A. Inc. v. NRDC,
467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

Coke v. Long Island Care at Home, Ltd.,
462 F.3d 48 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Coke v. Long Island Care at Home Ltd.,
376 F.3d 118 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Doe v. United States,
372 F.2d 1347 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Long Island Care At Home, Ltd. v. Coke,
127 S. Ct. 2339 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Lotz v. United States,
540 U.S. 982 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Martin v. Texas,
382 U.S. 928 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Mendenhall v. Cedar Rapids, Inc.,
5 F.3d 1557 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

National Cable & Telecommunications Association v. Brand X Internet Services,
545 U.S. 967 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Reich v. New York City Transit Authority,
45 F.3d 646 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Singh, et al., v. City of New York, No. 06-2969, 2008 WL 1885327
(2nd Cir. Apr. 29, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

United States v. Carver,
260 U.S. 482 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Zumerling v. Devine,
769 F.2d 745 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATUTES

29 U.S.C. § 201 et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

29 U.S.C. § 204(f) (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

29 U.S.C. § 254(b)(2) (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 8

31 U.S.C. § 1344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 14

31 U.S.C. § 1349 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## REGULATIONS

5 C.F.R. § 551.401 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

5 C.F.R. § 551.422(2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

41 C.F.R. § 102-5 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 15

## MISCELLANEOUS

Colloquium, *Panel Discussion on Intra-Circuit Conflicts*,
11 Fed. Cir. B.J. 623 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Dept. of Labor, Wage and Hour Div.,
F.O.H. § 31d00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Federal Pay Administration Under the Fair Labor Standards Act,
45 Fed. Reg. 85659 (Dec. 30, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

FRAP 35(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

FPM Letter 551-10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

Proposed Rules of the Office of Personnel Management, Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. 49580 (July 25, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 10

RCFC 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 17

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KERRY R. HAMILTON, Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | ) | Case No. 06-680C (Judge Margaret M. Sweeney) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, DISMISSING THE CLAIMS REMAINING TO BE ADJUDICATED**

On May 29, 2008, defendant filed a motion for judgment on the pleadings under RCFC 12(c) ("Def. Mot. ___" hereinafter), seeking dismissal of plaintiff's "home/work" driving ("driving") claims in this case based upon the Federal Circuit's decision in Adams v. United States, 471 F.3d 1321 (Fed. Cir. 2006), reh'g and reh'g en banc denied, 219 Fed. Appx. 993 (Fed. Cir. 2007), cert. denied, 128 S.Ct. 866 (2008) ("Adams").[1/]

Plaintiff is an employee of the Drug Enforcement Administration employed as a Diversion Investigator. Plaintiff submits that for several reasons, including recent decisions of the United States Supreme Court in Long Island Care At Home, Ltd. v. Coke, 127 S. Ct. 2339 (2007), ("Coke"), and National Cable & Telecommunications Association v. Brand X Internet Services, 545 U.S. 967

[1/] This case was brought to establish the FLSA non-exempt status of plaintiff who had been treated as FLSA exempt by defendant. The parties have settled plaintiff's claim regarding her entitlement to FLSA non-exempt status and plaintiff has been converted to FLSA non-exempt status by defendant. Compensation for home/work driving of defendant's vehicles by plaintiff was alleged as FLSA back pay owed for "travel." On a motion for judgment on the pleadings ". . . the court must indulge all reasonable inferences in favor of the plaintiffs." Atlas Corp. v. United States, 895 F.2d 745, 749 (Fed. Cir. 1990).

(2005) ("National Cable"), and distinguishing facts and law, defendant is not entitled to the RCFC 12(c) judgment on the pleadings it seeks.

Further, defendant has not submitted any facts by way of affidavits or declarations to support its motion. Instead defendant has made factual representations based upon unverified statements by defendant's counsel. For example, it asserts without any factual support that "[t]he position involved here – Drug Enforcement Administration ("DEA") Diversion Investigator – is well within the range of positions involved in Bobo [v. United States, 37 Fed. Cl. 690 (1997), aff'd, 136 F.3d 1465 (Fed. Cir. 1998) ("Bobo")] and Adams." Def. Mot. at 2. In fact, however, driving by Diversion Investigators is engaged in as part of "field work" provided for under 31 U.S.C. § 1344 and 41 C.F.R. § 102-5. See infra at 13-15. And the Diversion Investigator position was not considered by the courts in either Adams or Bobo.

## I. DETERMINATIONS OF THE LAW APPLICABLE TO "TIME WORKED" UNDER FLSA HAS CHANGED SIGNIFICANTLY SINCE ADAMS.

Defendant's claim that the decision of the Federal Circuit in Adams requires dismissal of plaintiff's driving claims in this case is mistaken. In Adams a panel of the Federal Circuit held that occupational code 1811 GS-12 Federal criminal investigators, who were issued government vehicles by defendant and were required by defendant to drive those vehicles between home and work each day so they could respond to emergencies at any time, were not entitled to be compensated for such driving under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., ("FLSA"). In so holding, the panel concluded that to entitle the plaintiffs to compensation under FLSA for "merely commuting in a government-owned vehicle is insufficient, the plaintiffs must perform additional legally cognizable work while driving to their workplace in order to compel compensation for the time spent driving." 471 F.3d at 1325.

Plaintiff submits that whatever else may be said regarding the panel's conclusion in Adams that the driving involved there was not FLSA compensable, the reasoning in Adams has been nullified by the Supreme Court's decisions in Coke and National Cable.

In Coke, the Supreme Court held that the Second Circuit's twice-stated conclusion[2/] that home healthcare workers were covered by FLSA was contrary to the United States Department of Labor's ("DOL") position set forth in its FLSA regulations and interpretations which declared home healthcare workers exempt from FLSA coverage. The Supreme Court ruled in Coke that courts are obligated to defer to regulations and interpretations of agencies entrusted to administer statutes, formulate policy and make rules "to fill any gap left, implicitly or explicitly, by Congress." 127 S. Ct. at 2345 (citing Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 843 (1984)). As stated by the Supreme Court in Coke: "When an agency fills such a 'gap' reasonably, and in accordance with other applicable (e.g., procedural) requirements, the courts accept the result as legally binding." Id. at 2345-46 (internal citations omitted).

In concluding that under DOL regulations and interpretations home healthcare workers employed by parties other than the individual recipients of their services are FLSA exempt, the Court stated:

> [T]he ultimate question is whether Congress would have intended, and expected, courts to treat an agency's rule, regulation, application of a statute, or other agency action as within, or outside, its delegation to the agency of "gap-filling" authority. Where an agency rule sets forth important individual rights and duties, where the agency focuses fully and directly upon the issue, where the agency uses full notice-and-comment procedures to promulgate a rule, where the resulting rule falls within the statutory grant of authority, and

[2/] See Coke v. Long Island Care at Home Ltd., 376 F.3d 118 (2nd Cir. 2004) and Coke v. Long Island Care at Home, Ltd., 462 F.3d 48 (2nd Cir. 2006).

> where the rule itself is reasonable, then a court ordinarily assumes that Congress intended it to defer to the agency's determination.

Id. at 2350-51 (emphasis in the original) (internal citations omitted).

Another recent Supreme Court decision that is equally as relevant herein as Coke, and which closely resembles the circumstances presented here is National Cable. The Ninth Circuit's decision, see 345 F.3d 1120, 1130-1131 (2003), rejected the conclusion of the Federal Communications Commission ("FCC") that under the 1996 amendments to the Communications Act, 47 U.S. § 151 et seq., as amended, cable companies providing cable modem services were exempt from mandatory regulation, relying upon "the stare decisis effect of its decision in AT&T Corp. v. Portland, 216 F.3d 871 (9th Cir. 2000) . . ." ("Portland"), which "held that cable modem service was a 'telecommunications service' . . . ." 545 U.S. at 979.[3/] The Court of Appeals reasoned that Portland's holding "overrode the contrary interpretation reached by the Commission . . . ." Id. at 980.

On certiorari, the Supreme Court reversed, declaring as follows:

> The Court of Appeals declined to apply Chevron because it thought the Commission's interpretation of the Communications Act foreclosed by the conflicting construction of the Act it had adopted in Portland. See 345 F.3d, at 1127-1132. It based that holding on the assumption that Portland's construction overrode the Commission's, regardless of whether Portland had held the statute to be unambiguous. 345 F.3d, at 1131. That reasoning was incorrect.
>
> A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion. This principle follows from Chevron itself. Chevron

[3/] The Supreme Court noted that the court in Portland "was not reviewing an administrative proceeding." Id. at 980.

> established a "presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." Smiley, supra, at 740-741, 135 L. Ed. 25, 116 S. Ct. 1730. Yet allowing a judicial precedent to foreclose an agency from interpreting an ambiguous statute, as the Court of Appeals assumed it could, would allow a court's interpretation to override an agency's. Chevron's premise is that it is for agencies, not courts to fill statutory gaps. See 467 U.S., at 843-844, and n. 11, 81 L. Ed. 2d 694, 104 S. Ct. 2778. The better rule is to hold judicial interpretations contained in precedents to the same demanding Chevron step one standard that applies if the court is reviewing the agency's construction on a blank slate: Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction.

Id. at 982-83.

In this case the identical situation obtains. In Adams the Federal Circuit, in reliance upon its prior decision in Bobo,[4/] held that the plaintiff's home/work driving was non-compensable even though under OPM's regulations such driving is clearly compensable, and FLSA non-exempt criminal investigators had been paid by defendant for such driving under OPM's regulations for more than twenty years. 471 F.3d at 1327. "[U]nder [FPM Letter No. 551-10] FLSA non-exempt officers were indeed compensated for their commute time." Id. (emphasis in original).

---

[4/] "Bobo still teaches that commuting done for the employer's benefit, under the employer's rules, is noncompensable if the labor beyond the mere act of driving the vehicle is de minimus. That is the case here." Id. at 1328.

Thus, under both Coke and National Cable, it is the agency's regulations and interpretations that must be respected, deferred to, and applied by the courts, absent a finding by a court of "unambiguous terms of the statute" that "leaves no room for agency discretion. . . ." Id.[5/]

In the instant case, OPM's applicable FLSA regulations were adopted after notice and comment on December 30, 1980, 45 F.R. 85659, and became effective on January 29, 1981. Under 5 C.F.R. § 551.401 of these long-standing OPM Regulations, "Hours of Work" are defined in relevant part as follows:

> **§ 551.401 Basic principles.**
>
> (a) All time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency is "hours of work." Such time includes:
>
> (1) Time during which an employee is required to be on duty;
>
> (2) Time during which an employee is suffered or permitted to work; and
>
> (3) Waiting time or idle time which is under the control of an agency and which is for the benefit of any agency.

5 C.F.R. § 551.401 (2008).

First, under § 551.401(a)(1), plaintiff can establish that she was "on duty" while driving her government vehicle between home and work; and alternatively that under § 551.401(a)(2) she was being "suffered or permitted" to work when driving. See Doe v. United States, 372 F.2d 1347, 1360-61 & nn.6-7 (Fed. Cir. 2004). And, even if plaintiff's driving is viewed as merely constituting

---

[5/] This principle was recently acknowledged and applied by this Court in Aeolus Systems, LLC v. United States, 79 Fed. Cl. 1, 9-10 (2007).

"waiting time or idle time," it is equally compensable under FLSA since it is under DEA's direction and control and for its benefit.

Further, OPM's longstanding regulations at 5 C.F.R. § 551.422(a)(2) (2008), declare that "[t]ime spent traveling shall be considered hours of work if . . . (2) [a]n employee is required to drive a vehicle or perform other work while traveling." (Emphasis added). Thus, such required driving is declared by OPM to be FLSA compensable "hours of work," without requiring that "the plaintiffs must perform additional legally cognizable work while driving . . . to compel compensation for the time spent driving," as the Federal Circuit held in Adams to be required. 471 F.3d at 1325.

On this basis plaintiff submits that just as was the case in Coke and National Cable, this Court is presently obligated to defer to OPM's regulations rather than to the contrary rulings of the Federal Circuit, and that on their face these regulations require it to declare plaintiff's driving compensable under FLSA.

Plaintiff therefore submits that the Federal Circuit's decisions in Adams and Bobo stand on the same footing as the Second Circuit's two decisions in Coke and the Ninth Circuit's decisions in National Cable and Portland. Those decisions were reversed and repudiated by the Supreme Court for their failure to defer to the regulations and interpretations of DOL and FCC. In this case the agency charged with administering the FLSA in the Federal sector is OPM, see 29 U.S.C. § 204(f) (2000),[6/] and on their face OPM's regulations unquestionably support plaintiff's position.[7/]

---

[6/] "Notwithstanding any other provision of this chapter, or any other law, the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States. . . ."

[7/] In Adams the Federal Circuit neither deferred to, nor even considered, the provisions of OPM's regulations relating to time worked under FLSA. Instead it followed and applied its (continued...)

A highly instructive recent decision on a major issue presented herein was rendered by the Second Circuit on April 29, 2008, in Singh, et al., v. City of New York, 524 F.3d 361 (2nd Cir. 2008), ("Singh"), relating to compensation under FLSA for time spent by employees commuting between home and work. In Singh, the plaintiffs were New York City fire alarm inspectors who were "required by their employer to carry and keep safe necessary inspection documents during their commutes." Id. at 364. Plaintiffs carried their work related documents to work in briefcases, and they commuted to their assigned work locations by subway and bus.

The Second Circuit defined the ultimate issue in Singh to be whether the time involved "'is spent predominantly for the employer's benefit or for the employee's [which] is a question dependent upon all the circumstances of the case.'" Id. at 367 (quoting Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944)). In concluding that plaintiffs' commuting time was not FLSA compensable, the Second Circuit declared:

> Carrying a briefcase during a commute presents only a minimal burden on the inspectors, permitting them freely to use their commuting time as they otherwise would have without the briefcase. Whether it be reading, listening to music, eating, running errands, or whatever else the plaintiffs choose to do, their use of the commuting time is materially unaltered. While the City certainly benefits from the plaintiffs' carrying these materials, it cannot be said that the City is the predominant beneficiary of this time.

Id. at 368.

---

[7/](...continued)
decision in Bobo.

Plaintiff submits that the foregoing analysis distinguishes the instant case from Singh, and it places the plaintiff's driving in the category of FLSA compensable work.[8/] Here plaintiff can and will demonstrate that her driving was controlled and directed by defendant and was engaged in exclusively for its benefit. Hence, personal activities that might benefit the plaintiff are prohibited. Indeed, for plaintiff to engage in such personal activities is punishable under federal law by suspension and discharge. See 31 U.S.C. § 1349 (2000).

Plaintiff submits that the foregoing recitation of law makes clear that the invocation of Adams by defendant is insufficient to support its motion for judgment on the pleadings, and that plaintiff is entitled to litigate her home/work driving claim herein unimpeded by the Federal Circuit's Adams decision.

---

[8/] In Reich v. New York City Transit Authority, 45 F.3d 646 (2nd Cir. 1995), the Second Circuit held home/work driving by New York City Transit Authority dog handlers of their own cars while transporting their assigned dogs not FLSA compensable. The court noted that "no rule require[d] that the handler be the one who drives or that he use his own car." Id. at 648, n. 2. Nor was there evidence that the dog handlers were not free to make personal stops while commuting. In ruling such driving non-compensable, the court declared:

> While no clear standards emerge, certain generalizations can be drawn from these authorities. The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable.

Id. at 650 (emphasis added).

Thus the Reich case is clearly consistent with Singh and contrary to Adams in which the driving was solely for defendant's benefit.

## II. THE FEDERAL CIRCUIT'S DECISION IN BILLINGS OBLIGATES THIS COURT TO DEFER TO DOL'S FLSA REGULATIONS UNDER WHICH REQUIRED HOME/WORK DRIVING IS FLSA COMPENSABLE.

The relevant OPM regulations were adopted on the basis of being consistent with those of the United States Department of Labor ("DOL"). Hence, on December 30, 1980, after notice and comment regarding its proposed FLSA regulations, 45 Fed. Reg. 49580 (July 25, 1980), OPM issued its final FLSA regulations. In doing so, it commented as follows:

> Time Spent Traveling
>
> Numerous comments questioned the specific rules for compensable travel time under the Act. These rules are presently contained in FPM Letters 551-10[9/] and 11. The letters also include in depth instructions, with examples, on how the rules are to be applied under the Act. The rules are consistent with the rulings, interpretations, and opinions of the Department of Labor and the courts in the private sector. We recognize that the rules for compensable travel time under title 5, United States Code, differ considerably from those under FLSA. This area is one of the most difficult in premium pay administration because of the dual administrations of title 5 and the FLSA. The rules for compensable travel time must be applied separately under each law, title 5 and FLSA, and nonexempt employees are to be paid under whichever law provides them the greater overtime pay benefit. (emphasis added).

Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. 85659, 85661 (Dec. 30, 1980).

As for the regulations as adopted, they are identical to those presently set forth at 5 C.F.R. § 551.401 and 5 C.F.R. § 551.422. Supra at 5-6. And OPM expressly declared that its regulations

---

[9/] Under OPM's FPM Letter No. 551-10 (April 30, 1976), Federal employees who were required to drive defendant's vehicles home "to respond to emergency calls immediately from his/her home," were entitled to be paid for home/work driving since OPM considered it to be "hours worked."

were "consistent with the rulings, interpretations, and opinions of the Department of Labor and the courts in the private sector. . . ." 45 Fed. Reg. at 85661.

The most recent pronouncement by the Federal Circuit regarding the requirement that OPM "harmonize" its administration of the FLSA with that of DOL was set forth in Billings, et al. v. United States, 322 F.3d 1328 (Fed. Cir. 2003), cert. denied sub nom, Lotz v. United States, 540 U.S. 982 (2003).

In Billings, the plaintiffs contended that OPM's FLSA regulation defining the executive exemption from FLSA coverage was invalid because it conflicted with DOL's regulations on the ground that DOL imposed a salary-basis test in determining FLSA non-exempt status while OPM did not. In concluding that the differences between DOL's and OPM's regulations relating to the salary test were appropriate, the Federal Circuit declared:

> [W]e must first determine whether the OPM interpretation of the statute is reasonable, as well as whether any difference between OPM's interpretation and the Labor Department standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees. See, e.g., Zumerling v. Devine, 769 F.2d 745, 750 (OPM's guidelines must "harmonize with the statute's 'origin and purpose,' . . . as well as with the Secretary of Labor's regulations" (internal citations omitted)).
>
> We conclude that the OPM definition of an "executive" employee is a reasonable interpretation of the Fair Labor Standards Act. As noted above, federal employees are subject to suspensions under Title V that are not applicable in the private sector. Under the interpretation urged by appellants, nearly every federal employee would be considered non-exempt because Title V applies to a vast majority of all federal employees. Because of the peculiar nature of the statutory framework surrounding federal employment, it is reasonable for OPM's regulation to vary from the Labor Department Standard. Moreover, in reviewing the OPM and Labor Department definitions, the regulations are nearly identical, but for the salary-basis test. Thus, the variance in OPM's regulation is no more than needed to accommodate the difference between private and public sector

> employment. We see no error in the determination by the Court of Federal Claims that the OPM regulation is a reasonable application of the Fair Labor Standards Act to the federal sector.

322 F.3d at 1334.

The principles announced in Billings were subsequently applied by Chief Judge Damich in Angelo v. United States, 57 Fed. Cl. 100 (2003). There the Court concluded that a greater executive authority in the area of hiring or discharge is a required component of the test under DOL's regulations for the executive exemption whereas the Federal Government's construction of the relevant OPM regulation "would have the Court find an employee exempt based merely on authority to promote or advance in pay." Id. at 114. The Court concluded that, "[t]hus, in the context of executive employees, the OPM standard clearly sets out a broader opportunity for exemption (or, from Plaintiffs' perspective, a looser threshold) than the DOL regulations." Id.

The Court then concluded that "there is no apparent justification for why a federal employee should be considered an executive exempt from FLSA overtime requirements because of authority to recommend mere advancement in pay or promotion of subordinates, while a comparable private sector employee is required to demonstrate additional authority to recommend the more significant action of hiring or firing such subordinates." Id. The Court concluded that the OPM regulation had to comply with DOL's regulation and that the Court would hear the parties' evidence regarding this component "as construed herein . . . at trial."[10/]

---

[10/] "In short, a demonstration of authority regarding hiring or firing is required. The Court will thus hear the parties' evidence regarding this component as construed herein, as well as the remaining component of the primary duty test, at trial." 57 Fed. Cl. at 114-15.

The incompatibility of the Federal Circuit's rule in Adams with DOL's construction of the FLSA is clear. Hence, DOL's current Field Operations Handbook contains a rule (albeit addressing ambulances), that indicates DOL's position on home/work driving:

> In the ordinary case where an employer permits an employee to drive an ambulance to and from his home for the employee's own convenience, the time so spent is not hours worked. If the employee is required to take the ambulance home in order to respond to calls immediately, all the time spent in driving would be hours worked.

Wage and Hour Div., F.O.H. § 31d00(a)(5) (internal citation omitted) (emphasis added).

Plaintiff submits that consistency with DOL's position requires this Court to declare plaintiff's driving to be FLSA compensable. See Am. Fed'n of Gov't Employees v. Office of Personnel Management, 821 F.2d 761, 769-772 (D.C. Cir. 1987).

## III. THE ADAMS CASE DID NOT INVOLVE DIVERSION INVESTIGATORS.

As to the Diversion Investigator driving claims involved in this case, they were not litigated at all in Adams. Plaintiff drove and drives between home and work performing "field work" pursuant to the provisions of 31 U.S.C. § 1344 which declare in relevant part:

> § 1344. Passenger carrier use
>
> (a)
>
> (1) Funds available to a Federal agency, by appropriation or otherwise, may be expended by the Federal agency for the maintenance, operation, or repair of any passenger carrier only to the extent that such carrier is used to provide transportation for official purposes. Notwithstanding any other provision of law, transporting any individual other than the individuals listed in subsections (b) and (c) of this section between such individual's residence and such individual's place of employment is not transportation for an official purpose.

> (2) For purposes of paragraph (1), transportation between the residence of an officer or employee and various locations that is—
>
> > (A) required for the performance of field work, in accordance with regulations prescribed pursuant to subsection (e) of this section . . .
>
> * * *
>
> is transportation for an official purpose, when approved in writing by the head of the Federal agency.

* * *

The regulations regarding "Home-To-Work Transportation" referred to in 31 U.S.C. § 1344 are set forth at 41 C.F.R. § 102-5 (2007). A copy of those regulations is attached as Plaintiff's Exhibit 1. Among the relevant provisions of these regulations, which plaintiff submits support the compensability of her driving as a Diversion Investigator in connection with "field work," are the following:

§ 102-5.30 provides the following definitions:

> <u>*Field work* means official work requiring the employee's presence at various locations other than his/her regular place of work</u>. (Multiple stops (itinerant-type travel) within the accepted local commuting area, limited use beyond the local commuting area, or transportation to remote locations that are only accessible by Government-provided transportation are examples of field work.)

(Emphasis added).

* * *

§ 102-5.70 provides as follows in sub-section (b):

> <u>The use of home-to-work transportation for field work should be authorized only to the extent that such transportation will substantially increase the efficiency and economy of the Government</u>.

(Emphasis added).

* * *

§ 102-5.95 provides as follows:

> Is the comfort and/or convenience of an employee considered sufficient justification to authorize home-to-work transportation? No, the comfort and/or convenience of an employee is not considered sufficient justification to authorize home-to-work transportation.

* * *

§ 102-5.120 provides as follows:

> What are [agencies'] responsibilities for documenting use of home-to-work transportation?
>
> Your responsibilities for documenting use of home-to-work transportation are that <u>you must maintain logs or other records necessary to verify that any home-to-work transportation was for official purposes</u>. Each agency may decide the organizational level at which the logs should be maintained and kept. The logs or other records should be easily accessible for audit and should contain:
>
> (a) Name and title of employee (or other identification, if confidential) using the passenger carrier;
>
> (b) Name and title of person authorizing use;
>
> (c) Passenger carrier identification;
>
> (d) Date(s) home-to-work transportation is authorized;
>
> (e) Location of residence;
>
> (f) Duration; and
>
> (g) Circumstances requiring home-to-work transportation.

(Emphasis added).

Thus the applicable regulations both of OPM set forth supra at 6-7, and of the Government Services Administration ("GSA") attached hereto as Plaintiff's Exhibit 1, support the conclusion that home-work driving for the purposes of conducting "field work" is FLSA compensable since they show that such driving meets OPM's regulatory requirements for defining FLSA "hours of work."

## IV. STARE DECISIS DOES NOT APPLY.

Defendant appears to contend that under the doctrine of stare decisis the Federal Circuit's Adams decision is dispositive herein. However, it is well-settled that at best "the doctrine of stare decisis applies to only legal issues and not issues of fact." Avenues in Leather v. United States, 423 F.3d 1326, 1331 (Fed. Cir. 2005). Thus, while stare decisis "makes each judgment a statement of the law, or precedent, binding in future cases, . . . [i]t deals only with law, as the facts of each case must be determined by the evidence adduced at trial. . . ." Mendenhall v. Cedar Rapids, Inc., 5 F.3d 1557, 1570 (Fed. Cir. 1993) (internal citation omitted). Thus plaintiff is fully entitled to present her factual and legal cases to this Court and distinguish this case from Adams on both facts and law.

That the application of stare decisis is limited is reflected in a "Panel Discussion on Intra-Circuit Conflicts," which occurred in 2001 at the Third Bench and Bar Conference of the Federal Circuit Bar Association in which Federal Circuit Chief Judge Michel participated as a panelist. In the course of responding to a question, Chief Judge Michel stated:

> **Judge Michel** . . . We have a case, a predominant case about stare decisis and later panels being bound as Null, so sometimes people talk about the Rule of Null and en gros in the sort of first cut, a crude analysis, the Rule of Null is that later panels are bound by every decision of every earlier panel and that's right but it's not the end of the analysis. I would suggest to you that there are some subtler variations. So, let's call that Null 1 and I'm going to give you my personal version of Null 2, 3, and 4. These aren't real decisions but if you search around, I think you can find this in our precedent. Null 2 would be, if the later panel distinguishes, let's assume fairly, the

> apparently conflicting earlier decision, then the Rule of Null 1 does not apply. That is the second panel's decision can be different and it's legitimate. Null 3 would be where a Supreme Court case controls; it would trump the earlier panel so the later panel would be free to do what it did and it would be legitimate assuming that the analysis is fair and then Null 4, and this is the most controversial, and these are just my own ideas of course. Null 4 would be, if the earlier decision had no analysis, cited no authority, but just made a statement, a single sentence just declaring some proposition of law. The later panel has a lot more flexibility in that circumstance where it can provide principled reasons and can cite authority to go on a divergent path. So there are a lot more subtleties than just the iron law that the first case always trumps every later case. It's not that simple.

See 11 Fed. Cir. B.J. 623, 648-649 (2001).

In this case plaintiff submits that the law has been modified since Adams on the basis of the Supreme Court's Coke and National Cable decisions, so that Judge Michel's "Rule of Null 3" is applicable. Plaintiff also contends that Adams does not "trump . . . every later case," and that it is inapplicable based upon the unique and distinct facts presented in this case relating to driving by Diversion Investigators in connection with "field work." Thus plaintiff submits that defendant's RCFC 12(c) motion for judgment on the pleadings must be denied.

## V. THE DENIAL OF PETITIONERS' PETITION FOR WRIT OF CERTIORARI AND PETITION FOR REHEARING EN BANC IN ADAMS DO NOT CONSTITUTE AFFIRMANCE OF THE FEDERAL CIRCUIT PANEL'S DECISION IN ADAMS.

That the denial of a petition for writ of certiorari provides no indication of the Supreme Court's views upon the merits of a case needs no explication. As the Supreme Court has consistently declared, "[t]he denial of a writ of certiorari imports no expression upon the merits of the case, as the bar has been told many times." United States v. Carver, 260 U.S. 482, 490 (1923). See Martin v. Texas, 382 U.S. 928, 929 (1965); Chessman v. Teets, 354 U.S. 156, 164 n. 13 (1957); Brown v. Allen, 344 U.S. 443, 491-492 (1953) (opinion of Frankfurter, J.).

Likewise, this is true of the Federal Circuit's denial of the Adams plaintiffs' Petition for Rehearing En Banc. Rule 35(a) of the Federal Rules of Appellate Procedure declares:

> (a) When Hearing or Rehearing En Banc May Be Ordered. A majority of the circuit judges who are in regular active service and who are not disqualified may order that an appeal or other proceeding be heard or reheard by the court of appeals en banc. An en banc hearing or rehearing is not favored and ordinarily will not be ordered unless:
>
> (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or
>
> (2) the proceeding involves a question of exceptional importance.

Accordingly, the denial of the Appellants' Petition for Rehearing En Banc in Adams may not be interpreted as reflecting approval of the panel's decision in Adams by the entire Federal Circuit.

Thus, plaintiff is entitled to litigate this case to a conclusion notwithstanding the Federal Circuit's decision in Adams. And she is entitled to do so based upon a full factual record.

## CONCLUSION

For the reason set forth herein, defendant's motion for judgment on the pleadings must be denied.

Plaintiff requests oral argument on defendant's motion.

Respectfully submitted,

OF COUNSEL:
Linda Lipsett

**s/Jules Bernstein**
Jules Bernstein (Counsel of Record)
Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile

Counsel of Record

**s/Edgar James**
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Attorneys for Plaintiff

Dated: June 30, 2008

**CERTIFICATE OF FILING**

I hereby certify under penalty of perjury that on this 30th day of June 2008, a copy of the foregoing “PLAINTIFF’S OPPOSITION TO DEFENDANT’S MOTION FOR JUDGMENT ON THE PLEADINGS, DISMISSING THE CLAIMS REMAINING TO BE ADJUDICATED” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court’s electronic filing system. Parties may access this filing through the Court’s system.