IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KERRY R. HAMILTON, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-680C |
| | ) | (Judge Margaret M. Sweeney) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE "DRIVING TIME" ISSUE, PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT THEREOF, AND REQUEST FOR ORAL ARGUMENT**

OF COUNSEL:
Linda Lipsett

Jules Bernstein
Bernstein & Lipsett
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile
Counsel of Record

**Filed electronically**

Edgar James
James & Hoffman
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Counsel for Plaintiff

July 31, 2008

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

QUESTION INVOLVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. UNDER OPM'S FLSA COMPENSATION REGULATIONS, FLSA NON-EXEMPT PLAINTIFF DIVERSION INVESTIGATORS AT DEA ARE ENTITLED TO BE PAID FOR DRIVING A GOVERNMENT VEHICLE BETWEEN HOME AND WORK . . . 5

II. DETERMINATIONS BY THE COURTS OF THE LAW APPLICABLE TO DEFINING "TIME WORKED" UNDER FLSA HAVE CHANGED SIGNIFICANTLY SINCE ADAMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. THE ADAMS CASE DID NOT INVOLVE DIVERSION INVESTIGATORS . . . . . . 20

IV. THE EMPLOYEE COMMUTING FLEXIBILITY ACT SUPPORTS PLAINTIFF'S ENTITLEMENT TO FLSA COMPENSATION FOR HOME/WORK DRIVING . . . . 22

V. THE FEDERAL CIRCUIT'S DECISION IN BILLINGS OBLIGATES THIS COURT TO DEFER TO DOL'S FLSA REGULATIONS UNDER WHICH REQUIRED HOME/WORK DRIVING IS FLSA COMPENSABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VI. STARE DECISIS DOES NOT APPLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

VII. THE DENIAL OF PETITIONERS' PETITION FOR WRIT OF CERTIORARI AND PETITION FOR REHEARING EN BANC IN ADAMS DO NOT CONSTITUTE AFFIRMANCE OF THE FEDERAL CIRCUIT PANEL'S DECISION IN ADAMS . . 31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CERTIFICATE OF SERVICE

# INDEX TO PLAINTIFF'S APPENDIX


| | | Page |
|---|---|---|
| Exhibit 5 | DEA Forms 349 C re Denise Jordan | 1-103 |
| Exhibit 6 | 41 C.F.R. § 102-5 Home-to-Work Transportation | 104-106 |
| Exhibit 7 | DEA Order 04-A-12 Subject: Home to Work Usage of OGVs (5/6/04) | 107-108 |
| Exhibit 8 | Excerpts from DEA Agent's Manual | 109-130 |
| Exhibit 9 | Excerpts from DEA Appendix A | 131-133 |
| Exhibit 10 | July 3, 2006 Memorandum to All Employees from Michele M. Leonhart, Deputy Administrator - Subject - Use of Official Government Vehicles (DFN: 060-01) | 134-135 |
| Exhibit 11 | DEA Standards of Conduct | 136-158 |
| Exhibit 12 | August 3, 2001 Memorandum to Special Agents in Charge Diversion Program Managers from Joseph D. Keefe, Chief of Operations - Subject - Diversion Control Program (FFS: 060-01); September 3, 2004 Memorandum to special Agents in Charge Diversion Program Managers from W. Michael Furgason, Sr., Chief of Operations - Subject - Submission of DEA Form 349C for Diversion Investigators (FFS: 060-01) | 159-164 |
| Exhibit 13 | Administrative Manual - Subchapter 032 Property (Motor Vehicles) | 165-172 |
| Exhibit 15 | § 1344. Passenger Carrier Use | 173-177 |
| Exhibit 16 | § 1349. Adverse Personnel Actions | 178 |
| Exhibit 17 | Deposition of Gary L. Boggs, dated July 17, 2008 | 179-207 |
| Exhibit 18 | Errata Sheet and Authentication of Signature of Gary L. Boggs, dated July 23, 2008 | 208-209 |

## TABLE OF AUTHORITIES

**PAGE**

### CASES

AARP v. EEOC, 390 Fed. Supp. 2d 437 (E.D. Pa. 2005), aff'd on other grounds 489 F.3d 558 (3d Cir. 2007), reh'g en banc denied 2007 U.S. App. LEXIS 30556 (3d Cir. Aug. 21, 2007), cert. denied 128 S. Ct. 1733 (2008), . . . . . 16, 17,18

Abbott v. United States, 204 F.3d 1099 (Fed. Cir. 2000) . . . . . 12

Adair v. United States, 497 F.3d 1244 (Fed. Cir. 2007) . . . . . 16

Adams v. United States, 471 F.3d 1321 (Fed. Cir. 2006), reh'g and reh'g en banc denied, 219 Fed. Appx. 993 (Fed. Cir. 2007), cert. denied, 128 S.Ct. 866 (2008) . . . . . passim

Am. Fed'n of Gov't Employees v. Office of Personnel Management, 821 F.2d 761 (D.C. Cir. 1987) . . . . . 29

Angelo v. United States, 57 Fed. Cl. 100 (2003) . . . . . 28

Armour & Co. v. Wantock, 323 U.S. 126 (1944) . . . . . 18

AT&T Corp. v. Portland, 216 F.3d 871 (9th Cir. 2000) . . . . . 8,9,17

Avenues in Leather v. United States, 423 F.3d 1326 (Fed. Cir. 2005) . . . . . 30

Bobo v. United States, 37 Fed. Cl. 690 (1997), aff'd, 136 F.3d 1465 (Fed. Cir. 1998) . . . . . 10,17,24,25

Billings v. United States, 322 F.3d 1328 (Fed. Cir. 2003), cert. denied, 540 U.S. 982 (2003) . . . . . 26,27,28

Brown v. Allen, 344 U.S. 443 (1953) . . . . . 31

Chessman v. Teets,
354 U.S. 156 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Chevron U.S.A. Inc. v. NRDC,
467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Coke v. Long Island Care at Home, Ltd.,
462 F.3d 48 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Coke v. Long Island Care at Home Ltd.,
376 F.3d 118 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Doe v. United States,
372 F.2d 1347 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Erie County Retirees Association v. County of Erie,
220 F.3d 193 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

Fuller v. Teachers Insurance Company, E.D.N.C.
2007 U.S. Dist. LEXIS 69845 (Sept. 19, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 10,13,14,16

Long Island Care At Home, Ltd. v. Coke,
127 S. Ct. 2339 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Mackey v. Nationwide Insurance Companies,
724 F.2d 419 (4th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,14,15

Martin v. Texas,
382 U.S. 928 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Mendenhall v. Cedar Rapids, Inc.,
5 F.3d 1557 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

National Cable & Telecommunications Association v. Brand X Internet Services,
545 U.S. 967 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Neal v. United States,
516 U.S. 284 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Reich v. New York City Transit Authority,
45 F.3d 646 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rotech Healthcare, Inc. v. United States,
71 Fed. Cl. 393 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Singh v. City of New York, No. 06-2969, 2008 WL 1885327
(2nd Cir. Apr. 29, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,19

Trafficante v. Metropolitan Life Ins. Co.,
409 U.S. 205 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Carver,
260 U.S. 482 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Warner-Lamber Co. v. United States,
425 F.3d 1381 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Zumerling v. Devine,
769 F.2d 745 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**STATUTES**

29 U.S.C. § 201 et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 204 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17

29 U.S.C. §§ 251-262. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

31 U.S.C. § 1344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

31 U.S.C. § 1349 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,19

47 U.S.C. § 151 et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**REGULATIONS**

5 C.F.R. § 551.401 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6,18,27

5 C.F.R. § 551.422 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,18,27

41 C.F.R. § 102-5 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4,20

## MISCELLANEOUS

Colloquium, *Panel Discussion on Intra-Circuit Conflicts*,
11 Fed. Cir. B.J. 623 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30,31

Dept. of Labor, Wage and Hour Div.,
F.O.H. § 31d00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Federal Pay Administration Under the Fair Labor Standards Act,
45 Fed. Reg. 85659 (Dec. 30, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,17,26,27

FRAP 35(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

FRCP 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

RCFC 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,32

FPM Letter 551-10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Proposed Rules of the Office of Personnel Management, Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. 49580 (July 25, 1980) . . . . . . . . . . . . . . . . . . . . . 17,26

Proposed Rules of the Department of Labor Regulations,
73 Fed. Reg. 43654 (July 28, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25,26

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KERRY R. HAMILTON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 06-680C<br>(Judge Margaret M. Sweeney) |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE "DRIVING TIME" ISSUE, PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT THEREOF, AND REQUEST FOR ORAL ARGUMENT**

Now comes the plaintiff in the above-captioned civil action and for the reasons set forth herein, and based upon Plaintiff's Statement of Uncontroverted Fact ("Pl. St. ¶ __") and accompanying exhibits set forth in Plaintiff's Appendix, the Declaration of Jules Bernstein ("Bernstein Decl. ¶ __) filed herewith and accompanying exhibit, as well as the instant memorandum of law, moves the Court under RCFC 56(c) for an order granting plaintiff's instant motion for partial summary judgment declaring plaintiff Diversion Investigator ("DI") at the Drug Enforcement Administration ("DEA"), to be entitled to compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), for time spent driving between home and field work assignments in an Official Government Vehicle ("OGV").

Plaintiff requests oral argument regarding this motion.

## QUESTION INVOLVED

The question presented by the instant motion is whether plaintiff Diversion Investigator is entitled to compensation under FLSA for home/work driving in an OGV in connection with her performance of "field work" on behalf of DEA.

## STATEMENT OF THE CASE

### I. GENERAL

On June 29, 2007, the parties settled certain of the plaintiff's FLSA claims but expressly reserved for further litigation the plaintiff's FLSA "driving time" claims. The June 29, 2007 Partial Settlement Agreement Covering Plaintiffs at the Drug Enforcement Administration ("DEA") in OPM Occupational Series 1801 and 1810 Non-Supervisory Positions at the GS-9 through GS-13 Grade Levels ("Agreement"), entered into between the parties provides in relevant part that it does not affect any right any plaintiff may have to continue to pursue a claim "for back pay, liquidated damages and/or interest for FLSA overtime and other pay or compensation against the United States not covered by this Agreement, including their claims for the time solely spent driving a government vehicle from home to work and work to home ('driving time') as an FLSA non-exempt employee . . . ." Agreement, ¶ 5.M, at 8, attached as Exhibit 1 to the attached Bernstein Declaration.

## SUMMARY OF FACTS[1/]

Diversion Investigators ("DIs") are employees of DEA, who are considered by DEA to be specialists who are "responsible for addressing the problem of diversion of controlled pharmaceuticals and regulated chemicals from the legitimate channels in which they are

[1/] This "Summary of Facts" is drawn from and is fully supported by Plaintiff's Statement of Uncontroverted Fact filed herein.

manufactured, distributed and dispensed. The role of the DI is to investigate suspected sources of diversion and to initiate appropriate administrative, civil and/or criminal action against them."

The work DIs are commonly involved in is what is known as "field work" which signifies "official work requiring the employee's presence at various locations other than his/her regular place of work (multiple stops (itinerant-type travel) within the accepted local commuting area, limited use beyond the local commuting area, or transportation to remote locations that are only accessible by Government-provided transportation are examples of field work.)"

In accordance with applicable federal regulations, see 41 C.F.R. Part 102-5, entitled "Home-to-Work Transportation," DIs are provided with the use of government vehicles to transport themselves between their home and locations where field work is performed.

Under 41 C.F.R. § 102-5.70 "the use of home-to-work transportation for field work should be authorized only to the extent that such transportation will substantially increase the efficiency and economy of the government." According to DEA, it issues government vehicles to DIs in circumstances in which it is more efficient and advantageous to the government for the employee to drive from his residence to a location where the employee will be engaged in field work than it would be for the employee to drive from his residence to the DEA local office and then check out a pool car and drive to the location where the field work is performed. Under these circumstances, the DIs would be able to work at a field work location for a greater period of time during normal working hours than they would be able to if they had to go first to their office and pick up a car. The efficiency involved for DEA is that DIs are able to be on site at the field location for a greater period of time to conduct their field work than if they had to report to their office and then go to the field

work location. According to DEA this situation improves the efficiency and economy of the government.

According to DEA the same is true at the end of the day. DIs are able to work for a longer period of time at a field site because otherwise they would have to drive their government car back to their office, and the time that they spent driving their car back to the office would be spent at the field work location doing work.

Under 41 C.F.R. § 102-5.95, "the comfort and/or convenience of an employee is not considered sufficient justification to authorize home-to-work transportation. And such home-to-work transportation may only be used for official purposes." 41 C.F.R. § 102-5.100.

While engaged in driving a government vehicle to perform field work, DIs are subject to discipline under 31 U.S.C. § 1349 for misuse of a government vehicle and are otherwise subject to DEA rules with regard to the proper use of government vehicles. Family members may not be transported in government vehicles by DIs. For example, transporting children to and from school or a spouse or friend to and from work is prohibited "even though the school or place of work is on the regular route to the operator's official duty station."

DIs are responsible for ensuring the maintenance of the vehicles to which they are assigned. Assignments of vehicles to DIs must be limited to a fifteen day period and be approved by appropriate DEA officials.

DIs may not consume or be under the influence of intoxicants while they are driving OGVs between their home and assigned field work sites nor may they consume intoxicants immediately prior to driving a government vehicle. Such conduct is subject to disciple under 31 U.S.C. § 1349, including suspension and discharge.

**I. UNDER OPM'S FLSA COMPENSATION REGULATIONS, FLSA NON-EXEMPT PLAINTIFF DIVERSION INVESTIGATORS AT DEA ARE ENTITLED TO BE PAID FOR DRIVING A GOVERNMENT VEHICLE BETWEEN HOME AND WORK.**

The Office of Personnel Management ("OPM") and its predecessor, the Civil Service Commission ("CSC"), were directed by Congress to "administer" the FLSA in the federal sector. 29 U.S.C. § 204(f).[2/]

OPM's FLSA regulations clearly establish that plaintiff's home/work driving is compensable under FLSA since such driving unquestionably meets the requirements of those regulations.

First, 5 C.F.R. § 551.401, defining "Hours of Work" under FLSA states in relevant part as follows:

> **§ 551.401 Basic principles.**
>
> (a) All time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency is "hours of work." Such time includes:
>
> (1) Time during which an employee is required to be on duty;
>
> (2) Time during which an employee is suffered or permitted to work;[3/] . . .

[2/] "Notwithstanding any other provision of this chapter, or any other law, the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States. . ."

[3/] "Under FLSA, an employee is entitled to overtime pay if the employer 'suffer[s] or permit[s]' the employee to work overtime. The Supreme Court has repeatedly emphasized the expansive nature of this particular language, stating that '[a] broader or more comprehensive coverage of employees . . . would be difficult to frame." Doe v. United States, 372 F.2d 1347, 1360-61 (Fed. Cir. 2004) (quoting 29 C.F.R. § 785.11 and United States v. Rosenwasser, 323 U.S. 360, 362 (1945)) (citations omitted) (alterations in original).

Thus, as stated in Abbott v. United States, 204 F.3d 1099, 1100 n.1 (Fed. Cir. 2000):

> Under the FLSA, roll-call time must be credited as hours worked because it is 'time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency.' 5 C.F.R. § 551.401(a).

Similarly, under § 551.401 such driving time is time that "an employee is required to be on duty . . ." and is time during which "an employee is suffered or permitted to work . . .".

In addition, 5 C.F.R. § 551.422 provides that "[t]ime spent traveling shall be considered hours of work if . . . (2) An employee is required to drive a vehicle[.]" (emphasis added). There is no question but that DIs are required by defendant to drive its vehicles between their home and work in connection with the performance of field work.

Thus, under the foregoing regulations, home/work driving of OGVs by plaintiff unquestionably constitutes hours of work for FLSA purposes. This is made clear by the undisputed facts set forth in Plaintiff's Statement of Uncontroverted Fact. Therefore, as a matter of both fact and law, home/work driving by DIs is compensable under OPM's FLSA rules since it fully meets the requirements of OPM's longstanding regulations. Thus, plaintiff is entitled to a declaration to such effect.

## II. DETERMINATIONS BY THE COURTS OF THE LAW APPLICABLE TO DEFINING "TIME WORKED" UNDER FLSA HAVE CHANGED SIGNIFICANTLY SINCE ADAMS.

In its motion for judgment on the pleadings, defendant has asserted that the decision of the Federal Circuit in Adams v. United States, 471 F.3d 1321 (Fed. Cir. 2006), reh'g and reh'g en banc denied, 219 Fed. Appx. 993 (Fed. Cir. 2007), cert. denied, 128 S.Ct. 866 (2008) ("Adams"), is dispositive of plaintiff's home/work driving claims herein. As to this assertion, defendant is mistaken. In Adams, a panel of the Federal Circuit held that occupational code 1811 GS-12 Federal

criminal investigators, who were issued government vehicles by defendant and were required by defendant to drive those vehicles between home and work each day so they could respond to emergencies at any time, were not entitled to be compensated for such driving under the FLSA notwithstanding that under OPM regulations and FPM Letter 551-10 FLSA non-exempt criminal investigators had been compensated for such driving since at least 1980.

In so holding, the panel concluded that to entitle the plaintiffs to compensation under FLSA for "simply commuting in a government-owned vehicle is insufficient. According to the Federal Circuit in Adams, the plaintiffs must "perform additional legally cognizable work while driving to their workplace in order to compel compensation for the time spent driving." 471 F.3d at 1325.

Plaintiff submits that whatever else may be said regarding the panel's conclusion in Adams that the driving involved there was not FLSA compensable, the reasoning in Adams has been nullified under the Supreme Court's recent decisions in Long Island Care At Home, Ltd. v. Coke, 127 S. Ct. 2339 (2007) ("Coke"), and National Cable & Telecommunications Association v. Brand X Internet Services, 545 U.S. 967 (2005) ("Brand X").

In Coke, the Supreme Court held that the Second Circuit's twice-stated conclusion[4/] that home healthcare workers were covered by FLSA was contrary to the United States Department of Labor's ("DOL") position set forth in its FLSA regulations and interpretations which declared such home healthcare workers exempt from FLSA coverage. The Supreme Court ruled in Coke that courts are obligated to defer to regulations and interpretations of agencies entrusted to administer statutes, formulate policy and make rules "to fill any gap left, implicitly or explicitly, by Congress."

---

[4/] See Coke v. Long Island Care at Home Ltd., 376 F.3d 118 (2nd Cir. 2004) and Coke v. Long Island Care at Home, Ltd., 462 F.3d 48 (2nd Cir. 2006).

127 S. Ct. at 2345 (citing Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 843 (1984)). As stated by the Supreme Court in Coke: "When an agency fills such a 'gap' reasonably, and in accordance with other applicable (e.g., procedural) requirements, the courts accept the result as legally binding." Id. at 2345-46 (internal citations omitted).

In concluding that under DOL FLSA regulations and interpretations home healthcare workers employed by parties other than the individual recipients of their services are FLSA exempt, the Court stated:

> [T]he ultimate question is whether Congress would have intended, and expected, courts to treat an agency's rule, regulation, application of a statute, or other agency action as within, or outside, its delegation to the agency of "gap-filling" authority. Where an agency rule sets forth important individual rights and duties, where the agency focuses fully and directly upon the issue, where the agency uses full notice-and-comment procedures to promulgate a rule, where the resulting rule falls within the statutory grant of authority, and where the rule itself is reasonable, then a court ordinarily assumes that Congress intended it to defer to the agency's determination.

Id. at 2350-51 (emphasis in the original) (internal citations omitted).

Another recent Supreme Court decision that is equally applicable herein as Coke, and which closely resembles the circumstances presented here, is Brand X. In a Ninth Circuit decision, see 345 F.3d 1120, 1130-1131 (2003), that court reversed the conclusion of the Federal Communications Commission ("FCC"), that under the 1996 amendments to the Communications Act, 47 U.S.C. § 151 et seq., as amended, cable companies providing cable modem services were exempt from mandatory regulation. In doing so the Ninth Circuit relied upon "the stare decisis effect of its decision in AT&T Corp. v. Portland, 216 F.3d 871 (9th Cir. 2000) . . ." ("Portland") which "held that cable

modem service was a 'telecommunications service' . . ." 545 U.S. at 979.[5/] The Court of Appeals reasoned in Brand X that Portland's holding "overrode the contrary interpretation reached by the Commission . . ." Id. at 980.

On certiorari, the Supreme Court reversed, declaring as follows:

> The Court of Appeals declined to apply Chevron because it thought the Commission's interpretation of the Communications Act foreclosed by the conflicting construction of the Act it had adopted in Portland. See 345 F.3d, at 1127-1132. It based that holding on the assumption that Portland's construction overrode the Commission's, regardless of whether Portland had held the statute to be unambiguous. 345 F.3d, at 1131. That reasoning was incorrect.
>
> A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion. This principle follows from Chevron itself. Chevron established a "presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." Smiley, supra, at 740-741, 135 L. Ed. 25, 116 S. Ct. 1730. Yet allowing a judicial precedent to foreclose an agency from interpreting an ambiguous statute, as the Court of Appeals assumed it could, would allow a court's interpretation to override an agency's. Chevron's premise is that it is for agencies, not courts to fill statutory gaps. See 467 U.S., at 843-844, and n. 11, 81 L. Ed. 2d 694, 104 S. Ct. 2778. The better rule is to hold judicial interpretations contained in precedents to the same demanding Chevron step one standard that applies if the court is reviewing the agency's construction on a blank slate: Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction.

Id. at 982-83.

---

[5/] The Supreme Court noted that the court in Portland "was not reviewing an administrative proceeding." Id. at 980.

In this case the identical situation is presented. In Adams, the Federal Circuit, in reliance upon its earlier decision in Bobo,[6/] held that the plaintiffs' home/work driving was non-compensable, even though FLSA non-exempt criminal investigators had been paid by defendant for such driving under OPM's regulations for more than twenty years. 471 F.3d at 1327. "[U]nder [FPM Letter No. 551-10] FLSA non exempt officers were indeed compensated for their commute time." Id. (emphasis in original).

Thus, under both Coke and Brand X, it is the agency's reasonable regulations and interpretations that must be respected, deferred to, and applied by the courts, absent a finding by a court of "unambiguous terms of the statute" that "leaves no room for agency discretion. . . ." Id.[7/]

Two recent district court decisions demonstrate how Brand X has changed the relationship between a trial court and its reviewing court when examining agency regulations under silent or ambiguous statutes: AARP v. EEOC, 390 F. Supp. 2d 437, 441 (E.D. Pa. 2005), aff'd on other grounds, 489 F.3d 558 (3d Cir. 2007), reh'g en banc denied 2007 U.S. App. LEXIS 30556 (3d Cir. Aug. 21, 2007), cert. denied 128 S. Ct. 1733 (2008) (hereinafter "AARP II"), and Fuller v. Teachers Insurance Company, 2007 U.S. Dist. LEXIS 69845 (E.D.N.C. Sept. 19, 2007) (hereinafter "Fuller").

**a. AARP II**

In March of 2005, Judge Anita Brody of the U.S. District Court for the Eastern District of Pennsylvania issued a permanent injunction against the Equal Employment Opportunity

---

[6/] "Bobo still teaches that commuting done for the employer's benefit, under the employer's rules, is noncompensable if the labor beyond the mere act of driving the vehicle is de minimus. That is the case here." Id. at 1328.

[7/] As to the Fair Labor Standards Act, it contains no definition of "work" or "hours of work."

Commission ("EEOC") prohibiting it from establishing and implementing a proposed rule regarding the Age Discrimination in Employment Act ("ADEA"). AARP v. EEOC, 383 F. Supp. 2d 705, 706 (E.D. Pa. 2005) (hereinafter "AARP I") (citing 68 Fed. Reg. 41,542, 41,542 (July 14, 2003)) (the proposed rule would alter, reduce, or eliminate employer-sponsored retiree health benefits when retirees become eligible for Medicare or a State-sponsored retiree health benefits program). Judge Brody specifically noted that the Third Circuit's decision in Erie County Retirees Association v. County of Erie, 220 F.3d 193 (3d Cir. 2000) (hereinafter "Erie") bound the District Court to deny the agency's attempt to change the regulation, and that the agency's determination failed under Chevron. See AARP II, 390 F. Supp. 2d at 441.

EEOC filed a timely notice of appeal. Id. at 441. Shortly after Brand X was decided, EEOC sought and was granted a remand by the Third Circuit. Id. EEOC was then granted leave to file a motion for relief from judgment under FRCP 60(b). Id.

No longer bound by the Third Circuit precedent, and required to defer to EEOC's new rule interpreting the statute at issue (29 U.S.C. § 623 (a)(1)), Judge Brody held that the EEOC's proposed exemption satisfied Chevron at step one and step two, and therefore was a "permissible" exercise of agency discretion. Id. at 441-42.

In AARP II, Judge Brody specifically noted that when she decided AARP I she was not free to review the statute for ambiguity because: "I did not write on a clean slate, but rather was bound by the Third Circuit's decision in [Erie] that the ADEA prohibited the employer practice at issue." Id. at 444 (citing AARP I, 383 F. Supp. 2d at 706). Prior to Brand X, only in the absence of the Erie decision would the district court have been free to find for itself that the statute was ambiguous and therefore reach Chevron step two. AARP II, 390 F. Supp. 2d at 444-45. Foreclosed by Erie, Judge

Brody did not analyze the EEOC's proposed rulemaking under Chevron step two at all, and granted summary judgment to AARP. Id. at 445. On appeal, the EEOC could then have requested that the Third Circuit reverse its previous holding in Erie in favor of the agency's new statutory interpretation.

In reviewing her previous decision in light of Brand X, Judge Brody noted that "only judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." Id. (citing Brand X, 125 S. Ct. at 2700) (emphasis added). Analyzing her decision in AARP I, Judge Brody declared that Brand X commanded the "broader proposition that a prior court interpretation of a statute cannot trump a subsequent agency interpretation unless the court holds that its interpretation is the only permissible, not merely the best, construction of the statute." AARP II, 390 F. Supp. 2d at 447 (citing Brand X, 125 S. Ct. at 2701) (emphasis added). Therefore, unless a court's holding states that it is the "'only permissible' interpretation, the court decision does not foreclose a later, differing agency interpretation." Id. at 448 (citing Brand X, 125 S. Ct. at 2701) (emphasis added).

Judge Brody then analyzed Erie to determine if it had held that its interpretation of the statute was the "only permissible" interpretation. Finding that it did not, she re-applied Chevron with Brand X deference to the agency's determination (i.e. determined if the agency's proposed rulemaking was a "reasonable" interpretation of the ADEA). AARP II, 390 F. Supp. 2d at 448-59. Having found that the EEOC's determination was a "permissible" interpretation and thus satisfied Chevron step two, Judge Brody vacated her prior permanent injunction. Id. at 462.

Thus, AARP II stands for the proposition that where a district court has found that a circuit court's prior judicial interpretation of a rule foreclosed deference to the agency, upon reconsideration the court may rely upon Brand X to hold the prior judicial determination to be non-binding (unless it is the "only possible" statutory construction) and give conclusive deference to an agency's rulemaking authority.

**b. Fuller**

On September 19, 2007, Judge James Fox of the United States District Court for the Eastern District of North Carolina considered a simultaneous FRCP 12(b)(6) motion to dismiss and FRCP 56 motion for summary judgment brought by the Teachers Insurance company ("TIC") against plaintiff's claim of unlawful intentional discrimination. Fuller, 2007 U.S. Dist. LEXIS 69845 at 1-2. TIC had denied homeowners' coverage to plaintiff Fuller for damage caused by a 2006 burglary because Fuller was operating the covered residence as a group home for recovering drug and alcohol addicts. Id. at 3-4. Fuller alleged that in 2004 she had notified TIC of the change in use of the home, but upon denial of coverage in 2006 learned that the policy had not been amended to reflect the change. Id. at 4.

TIC argued that the Fourth Circuit's decision in Mackey v. Nationwide Insurance Companies, 724 F.2d 419 (4th Cir. 1984), foreclosed plaintiff's claim. Fuller, 2007 U.S. Dist. LEXIS 69845 at 7-8. Mackey held that discriminatory practices by insurance carriers are not precluded by the Fair Housing Act of 1968 ("FHA"), and more specifically that the FHA does not preclude the practice of "redlining" (or basing availability of insurance coverage on the racial makeup of the neighborhood). Id. at 7-8 (citing Mackey, 724 F.2d at 423). Mackey specifically found that the FHA was silent as to whether it applied to insurance coverage, and found that the

failure to include insurance coverage in the FHA in the face of attempts to amend it to include insurance allowed the court to find that it did not. Id. (citing Mackey, 724 F.2d at 423-24). TIC argued that Mackey foreclosed the District Court from finding in favor of plaintiff as a matter of law. Id. at 8.

Judge Fox, however, noted that after Mackey was decided, the Department of Housing and Urban Development ("HUD") had promulgated rules "to prohibit discriminatory practices in providing hazard insurance because of race, color, religion, sex, handicap, familial status, or national origin." Id. at 9 (citing 24 C.F.R. 100.70(d)(4) (1988)) (emphasis added). HUD's newer regulation, therefore, conflicted directly with Mackey's holding permitting "redlining," presenting the same problem the Ninth Circuit faced in Brand X. Prior to Brand X, Judge Fox's only recourse would have been to criticize Mackey, point out the newer regulations in the record, but sustain the discriminatory insurance practice based on stare decisis under the claimed rationale of Neal. "In these circumstances, we need not decide what, if any, deference is owed the Commission . . . . Once we have determined a statute's meaning, we adhere to our ruling under the doctrine of stare decisis, and we assess an agency's later interpretation of the statute against that settled law." Neal, 516 U.S. at 295.

"The question, then, is what becomes of the converse interpretations of the FHA in the area of hazard and casualty insurance when a prior judicial interpretation conflicts with a later agency rule? [] Fortunately, the Supreme Court answered this very question in [Brand X]." Fuller, 2007 U.S. Dist. LEXIS 69845 at 10.

Judge Fox then analyzed Brand X, concluding that "Brand X requires a two prong inquiry in this case. First, whether HUD's promulgations would meet Chevron deference even in the

absence of a prior conflicting judicial interpretation, and second, whether the prior judicial holding left any room for agency discretion." Id. at 12. Judge Fox found that the statute was ambiguous and that the legislative history did not foreclose an agency interpretation, thus passing Chevron step one. Id. at 13-14.

Under Brand X, for HUD's anti-discrimination regulations to survive Chevron step two, two requirements had to be met.

First, the regulations must be a "reasonable policy choice for the agency to make" in that "it is in accordance with the law and neither arbitrary nor capricious." Id. at 14-15. Judge Fox found the anti-discrimination regulations to be both "entirely reasonable" and supported under Congress's mandate that HUD engage in rulemaking to enact the FHA's mandate to "end housing discrimination and to foster 'truly integrated and balanced living patterns.'" Id. at 15 (citing Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 211-12 (1972) (quoting 144 Cong. Rec. 3422 (1968))).

Second, any existing judicial determination on the matter must leave room for agency discretion. For such judicial foreclosure, the prior court must have held that "the statute unambiguously requires the court's construction." Id. at 16 (quoting Brand X, 125 S. Ct. at 2702).

Judge Fox analyzed the Mackey decision and concluded that while the Fourth Circuit had relied on "traditional tools of statutory interpretation," these did not require the case's holding to flow from an unambiguous statute. Id. at 16. Namely, the court's reliance on congressional silence in the FHA, the statute's legislative history, and the failed amendments did allow the Mackey court's reasonable judicial interpretation, but did not require it. Id. at 16-17. Specifically, the Fourth Circuit did not conclude that the statute was unambiguous or clear as to Congress's intent regarding the

insurance industry. Id. at 17. "Therefore, Brand X instructs that because the Fourth Circuit in Mackey did not 'unambiguously foreclose [] the possibility of agency discretion,' this court must recognize HUD's regulations as controlling on the issue of discrimination by the insurance industry under the FHA." Id. at 18-19 (quoting Brand X, 125 S. Ct. 2700-01).

Judge Fox's rejection of the Fourth Circuit's decision in favor of HUD's anti-discrimination regulations demonstrates the leeway that Brand X provides to district courts. When an agency's regulatory determination can reach Chevron step two (because it is not foreclosed by unambiguous statutory language), the regulation must be granted deference by the courts. "As the Brand X Court makes clear, a less stringent standard for determining which interpretation should stand would be contrary to the principles of Chevron deference by simply awarding precedence to the statutory interpretation that came first." Id. at 17 (citing Brand X, 125 S. Ct. at 2700-01).[8/]

In the instant case, OPM's applicable FLSA regulations were adopted after notice and comment on December 30, 1980, 45 F.R. 85659, and became effective on January 29, 1981. Plaintiff has demonstrated supra at 5-6 that time spent in home/work driving by DIs constitutes "Hours of Work" under OPM's regulations.

On this basis plaintiff submits that just as was the case in Coke, Brand X, AARP and Fuller, this Court is now obligated to defer to OPM's regulations rather than to the contrary rulings of the

---

[8/] For its part, the government has consistently requested Chevron deference under Brand X in a wide variety of cases in the Supreme Court, the Federal Circuit, and the United States Court of Federal Claims. See, e.g., Long Island Care at Home, Ltd. v. Coke, 127 S. Ct. 2339 (2007), Amicus Brief in Support of Petitioner: Long Island Care at Home, Ltd. v. Coke, 2006 U.S. Briefs 593 (2007), Adair v. United States, 497 F.3d 1244 (Fed. Cir. 2007), Warner-Lambert Co. v. United States, 425 F.3d 1381 (Fed. Cir. 2007), and Rotech Healthcare, Inc. v. United States, 71 Fed. Cl. 393 (2006).

Federal Circuit, and that on their face OPM's regulations require this Court to declare plaintiff's home/work driving compensable under FLSA.

Plaintiff submits that the Federal Circuit's decisions in Adams and Bobo stand on the same footing as the Second Circuit's two decisions in Coke, and the Ninth Circuit's decisions in Brand X and Portland. Those decisions were repudiated by the Supreme Court for their failure to defer to the regulations and interpretations respectively of DOL and FCC. In this case the agency charged with administering the FLSA in the Federal sector is OPM, see 29 U.S.C. § 204(f) (2000), and on their face OPM's regulations unquestionably support plaintiff's position.[9/]

Further, the relevant OPM regulations were adopted on the basis of being consistent with those of the United States Department of Labor ("DOL"). Hence, on December 30, 1980, after notice and comment regarding its proposed FLSA regulations, 45 Fed. Reg. 49580 (July 25, 1980), OPM issued its final FLSA regulations. In doing so, it commented as follows:

> Time Spent Traveling
>
> Numerous comments questioned the specific rules for compensable travel time under the Act. These rules are presently contained in FPM Letters 551-10 and 11. The letters also include in depth instructions, with examples, on how the rules are to be applied under the Act. The rules are consistent with the rulings, interpretations, and opinions of the Department of Labor and the courts in the private sector. We recognize that the rules for compensable travel time under title 5, United States Code, differ considerably from those under FLSA. This area is one of the most difficult in premium pay administration because of the dual administrations of title 5 and the FLSA. The rules for compensable travel time must be applied separately under each law, title 5 and FLSA, and nonexempt

[9/] In Adams the Federal Circuit neither deferred to, nor even considered, the provisions of OPM's regulations relating to time worked under FLSA. Instead it followed and applied its decision in Bobo.

> employees are to be paid under whichever law provides them the greater overtime pay benefit.

Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. 85659, 85661 (Dec. 30, 1980) (emphasis added).

As for the regulations as adopted, they are identical to those at 5 C.F.R. § 551.401 and 5 C.F.R. § 551.422 set forth supra at 5-6. And OPM expressly declared that these regulations and the rules contained in FPM Letter 551-10 were "consistent with the rulings, interpretations, and opinions of the Department of Labor and the courts in the private sector. . . ." 45 Fed. Reg. at 85661.

A highly instructive decision on the issue presented herein was rendered by the Second Circuit in Singh v. City of New York, 524 F.3d 361 (2nd Cir. 2008) ("Singh"), relating to compensation under FLSA for time spent by employees commuting between home and work. In Singh, the plaintiffs were New York City fire alarm inspectors who were "required by their employer to carry and keep safe necessary inspection documents during their commutes." Id. at 364. Plaintiffs carried their work related documents to work in briefcases, and they commuted to their assigned work locations by subway and bus.

The Second Circuit defined the ultimate issue in Singh to be whether the time involved "'is spent predominantly for the employer's benefit or for the employee's [which] is a question dependent upon all the circumstances of the case.'" Id. at 367 (quoting Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944)). In concluding that plaintiffs' commuting time was not compensable, the Second Circuit declared:

> Carrying a briefcase during a commute presents only a minimal burden on the inspectors, permitting them freely to use their commuting time as they otherwise would have without the briefcase. Whether it be reading, listening to music, eating, running errands, or whatever else the plaintiffs choose to do, their use of the commuting time is materially unaltered. While the City certainly benefits from

> the plaintiffs' carrying these materials, it cannot be said that the City is the predominant beneficiary of this time.

Id. at 368.

Plaintiff submits that the foregoing analysis distinguishes the instant case from Singh, and places plaintiff's driving in the category of FLSA compensable work.[10/] Here plaintiff has proved that her driving has been controlled or directed by defendant and has been engaged in for its benefit. And engaging in personal activities that might benefit the plaintiff are prohibited. Indeed, for plaintiff to engage in such personal activities in the course of home/work driving is punishable under federal law by suspension and discharge. See 31 U.S.C. § 1349 (2000).

Plaintiff further submits that the foregoing recitation makes clear that the invocation of Adams by defendant is now irrelevant, and that plaintiff is entitled to partial summary judgment on her driving claims.

---

[10/] In Reich v. New York City Transit Authority, 45 F.3d 646 (2nd Cir. 1995), the Second Circuit held home/work driving by New York City Transit Authority dog handlers of their own cars while transporting their assigned dogs not FLSA compensable. The court noted that "no rule require[d] that the handler be the one who drives or that he use his own car." Id. at 648, n. 2. Nor was there evidence that the dog handlers were not free to make personal stops while commuting. In ruling such driving non-compensable, the court declared:

> While no clear standards emerge, certain generalizations can be drawn from these authorities. The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable.

Id. at 650 (emphasis added).

Thus the Reich case is clearly consistent with Singh and contrary to Adams in which the driving was exclusively for defendant's benefit.

## III. THE ADAMS CASE DID NOT INVOLVE DIVERSION INVESTIGATORS.

As to the Diversion Investigator driving claims involved in this case, they were not litigated at all in Adams. Plaintiff drove and drives between home and work performing "field work" pursuant to the provisions of 31 U.S.C. § 1344 which declare in relevant part:

> § 1344. Passenger carrier use
>
> (a)
>
> (1) Funds available to a Federal agency, by appropriation or otherwise, may be expended by the Federal agency for the maintenance, operation, or repair of any passenger carrier only to the extent that such carrier is used to provide transportation for official purposes. Notwithstanding any other provision of law, transporting any individual other than the individuals listed in subsections (b) and (c) of this section between such individual's residence and such individual's place of employment is not transportation for an official purpose.
>
> (2) For purposes of paragraph (1), transportation between the residence of an officer or employee and various locations that is—
>
> > (A) required for the performance of field work, in accordance with regulations prescribed pursuant to subsection (e) of this section . . .
>
> * * *
>
> is transportation for an official purpose, when approved in writing by the head of the Federal agency.
>
> * * *

The regulations regarding "Home-To-Work Transportation" referred to in 31 U.S.C. § 1344 are set forth at 41 C.F.R. § 102-5 (2007). A copy of those regulations is included in Plaintiff's Appendix as Plaintiff's Appendix Exhibit 6. Among the relevant provisions of these regulations,

which plaintiff submits support the compensability of home/work driving as a Diversion Investigator in connection with "field work," are the following:

§ 102-5.30 provides the following definitions:

> *Field work* means official work requiring the employee's presence at various locations other than his/her regular place of work. (Multiple stops (itinerant-type travel) within the accepted local commuting area, limited use beyond the local commuting area, or transportation to remote locations that are only accessible by Government-provided transportation are examples of field work.)

(Emphasis added).

* * *

§ 102-5.70 provides as follows in sub-section (b):

> The use of home-to-work transportation for field work should be authorized only to the extent that such transportation will substantially increase the efficiency and economy of the Government.

(Emphasis added).

* * *

§ 102-5.95 provides as follows:

> Is the comfort and/or convenience of an employee considered sufficient justification to authorize home-to-work transportation?
> No, the comfort and/or convenience of an employee is not considered sufficient justification to authorize home-to-work transportation.

* * *

§ 102-5.120 provides as follows:

> What are [agencies'] responsibilities for documenting use of home-to-work transportation?
>
> Your responsibilities for documenting use of home-to-work transportation are that you must maintain logs or other records necessary to verify that any home-to-work transportation was for official purposes. Each agency may decide the organizational level

> at which the logs should be maintained and kept. The logs or other records should be easily accessible for audit and should contain:
>
> (a) Name and title of employee (or other identification, if confidential) using the passenger carrier;
>
> (b) Name and title of person authorizing use;
>
> (c) Passenger carrier identification;
>
> (d) Date(s) home-to-work transportation is authorized;
>
> (e) Location of residence;
>
> (f) Duration; and
>
> (g) Circumstances requiring home-to-work transportation.

(Emphasis added).

Thus the applicable regulations both of OPM set forth supra at 5-6, and of the Government Services Administration ("GSA") included in Plaintiff's Appendix as Plaintiff's Exhibit 6, support the conclusion that home/work driving for the purposes of conducting "field work" is FLSA compensable since they show that such driving meets OPM's regulatory requirements for defining FLSA "hours of work."

## IV. THE EMPLOYEE COMMUTING FLEXIBILITY ACT SUPPORTS PLAINTIFF'S ENTITLEMENT TO FLSA COMPENSATION FOR HOME/WORK DRIVING.

The Employee Commuting Flexibility Act, Pub. L. No. 104-108, § 2102, 110 Stat. 1755, 1928 (1996) ("ECFA") sheds significant light upon certain questions presented herein. Those provisions, enacted by Congress in 1996 as an amendment to the Portal-to-Portal Act, 29 U.S.C. §§ 251-262, provides:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee

> which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

In Adams the plaintiffs argued that since there was no agreement between the Government and the plaintiffs waiving employee compensation for travel in an employer vehicle between home and work, such travel remained compensable under OPM's regulations and was unaffected by ECFA.

Defendant responded to plaintiffs' argument as follows in Defendant's Motion for Partial Summary Judgment And Appendix filed in the Claims Court in Adams on August 9, 2002, at 15-16, footnote 7:

> In certain circumstances - particularly in the context of service employees whose work involved traveling in an employer-owned vehicle between various locations where the services are to be provided - driving such a vehicle has been considered a principal activity of the employee. When DOL issued an opinion stating that it was also compensable work to drive such a vehicle from home to the first work site of the day and back home from the last work site of the day, Congress amended the Portal to Portal Act by adding the following language to section 254(a):
>
> > For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

> Pub. L. No. 104-188, § 2102; 110 Stat. 1755, 1928 (1996). As the House Committee on Economic and Educational Opportunities explained, this amendment was prompted by the DOL's assertion "that the time spent by an employee traveling from home to the first work assignment, or returning home from the last assignment, was similar to that of traveling between jobs during the day and therefore represented a principal activity, which must be compensated." H.R. Rep. No. 585, 104th Cong., 2nd Sess. (1996), p. 2 (emphasis added). The amendment provided "clarification regarding the use of an employer-provided vehicle for travel from an employee's home to the first work location at the start of the workday and from the last work location to the employee's home at the end of the workday." Id. at 4. The added language clarifies that, under the specified conditions, the latter travel is not to be treated as a principal activity even if driving an employer-owned vehicle between various work locations is a principal activity. However, here, as in Bobo, the plaintiffs' principal activity during the work day does not consist of driving to a series of work assignments at a series of locations. Thus, the DOL analogy that prompted the amendment does not apply here, and there is no basis for viewing plaintiffs' commuting as a principal activity to begin with.

The significance of defendant's statement is that it acknowledges that it was DOL's position that "it was compensable work to drive such a vehicle from home to the first work site of the day and back home from the last work site of the day . . ." which was "similar to that of traveling between jobs during the day and therefore represented a principal activity, which must be compensated." (Emphasis in original.)

As plaintiff has demonstrated herein, driving of defendant's vehicles by plaintiff falls within the foregoing description of driving which constitutes compensable principal activity as to which the plaintiff never agreed to waive her FLSA overtime compensation.

For her part Judge Bush believed that ECFA did not apply as a defense against plaintiffs' claims because of the absence of the requisite agreement between employer and employee:

> ECFA . . . would apply . . . as a defense against liability under FLSA, if any employer-employee agreement fixing

> noncompensability of commuting time had been alleged. . . . Because there has been no allegation in any of the motions of such an agreement, ECFA is inapplicable to the summary judgment motions reviewed here. (65 Fed. Cl. at 226).[11/]

Indeed, the same conclusion had been reached earlier by the Claims Court in Bobo v. United States, 37 Fed. Cl. 690, 697 (1997).

Notwithstanding the foregoing, in reliance upon ECFA's language, the Federal Circuit concluded as follows in Adams:

> Therefore, merely commuting in a government owned vehicle is insufficient; the plaintiffs must perform additional legally cognizable work while driving to their workplace in order to compel compensation for the time spent driving. The question in this appeal is whether the requirements and restrictions placed on plaintiffs' commutes rise to that level. (471 F.3d at 1325).[12/]

Plaintiff submits that on its face, nothing in the language of ECFA supports the Federal Circuit's conclusion since the critical issue required to bring ECFA into play is the presence of "an agreement" between the parties waiving compensation for driving. Such agreement is admittedly absent here. And indeed this conclusion by the Federal Circuit conflicts with the position of DOL regarding ECFA. See Proposed Department of Labor Regulations regarding ECFA published in the Federal Register on July 28, 2008, 73 Fed. Reg. 43654-43673, in which DOL makes clear that for ECFA to come into play an "agreement" must exist.

Several observations flow from the foregoing recitation. First, plaintiff submits that the claim that plaintiff herein was engaged in compensable driving from home to her first field work site

---

[11/] However, Judge Bush did not believe that ECFA supported the Adams plaintiffs' entitlement to compensation for home/work driving. See 65 Fed. Cl. at 224-227.

[12/] The Government had not advanced this argument in its brief or in oral argument before the Federal Circuit in Adams.

and from her last field work site to her home was not litigated at all in Adams. Hence, this case is one of first impression and is not controlled by Adams, in which it was not claimed that the plaintiffs' compensable driving was from home to a "first stop."

Next, it is clear that "first stop" driving is considered compensable by DOL because it resembles driving from "stop to stop" during the workday; and finally, the Federal Circuit's conclusion that ECFA required that "plaintiffs must perform additional legally cognizable work while driving to their workplace"is not supported by ECFA's language and is contrary to both DOL's and OPM's positions. Thus it too is nullified by Brand X.

## V. THE FEDERAL CIRCUIT'S DECISION IN BILLINGS OBLIGATES THIS COURT TO DEFER TO DOL'S FLSA REGULATIONS UNDER WHICH HOME/WORK DRIVING IS FLSA COMPENSABLE.

The relevant OPM regulations were adopted on the basis of being consistent with those of the United States Department of Labor ("DOL"). Hence, on December 30, 1980, after notice and comment regarding its proposed FLSA regulations, 45 Fed. Reg. 49580 (July 25, 1980), OPM issued its final FLSA regulations. In doing so, it commented as follows:

> Time Spent Traveling
>
> Numerous comments questioned the specific rules for compensable travel time under the Act. These rules are presently contained in FPM Letters 551-10[13/] and 11. The letters also include in depth instructions, with examples, on how the rules are to be applied under the Act. The rules are consistent with the rulings, interpretations, and opinions of the Department of Labor and the courts in the private sector. We recognize that the rules for compensable travel time under title 5, United States Code, differ considerably from those

---

13/ Under OPM's FPM Letter No. 551-10 (April 30, 1976), Federal employees who were required to drive defendant's vehicles home "to respond to emergency calls immediately from his/her home," were entitled to be paid for home/work driving since OPM considered it to be "hours worked."

> under FLSA. This area is one of the most difficult in premium pay administration because of the dual administrations of title 5 and the FLSA. The rules for compensable travel time must be applied separately under each law, title 5 and FLSA, and nonexempt employees are to be paid under whichever law provides them the greater overtime pay benefit.

Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. 85659, 85661 (Dec. 30, 1980) (emphasis added).

As for the regulations as adopted, they are identical to those presently set forth at 5 C.F.R. § 551.401 and 5 C.F.R. § 551.422. See supra at 5-6. And OPM expressly declared that these regulations were "consistent with the rulings, interpretations, and opinions of the Department of Labor and the courts in the private sector. . . ." 45 Fed. Reg. at 85661.

The most recent pronouncement by the Federal Circuit regarding the requirement that OPM "harmonize" its administration of the FLSA with that of DOL was stated in Billings, et al. v. United States, 322 F.3d 1328 (Fed. Cir. 2003), cert. denied, 540 U.S. 982 (2003).

In Billings, the plaintiffs contended that the FLSA regulation of OPM defining the executive exemption from FLSA coverage was invalid because it conflicted with DOL's regulations on the ground that DOL imposed a salary-basis test in determining FLSA non-exempt status while OPM did not. In concluding that the differences between DOL's and OPM's regulations relating to the salary test were appropriate, the Federal Circuit declared:

> [W]e must first determine whether the OPM interpretation of the statute is reasonable, as well as whether any difference between OPM's interpretation and the Labor Department standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees. See, e.g., Zumerling v. Devine, 769 F.2d 745, 750 (OPM's guidelines must "harmonize with the statute's 'origin and purpose,' . . . as well as with the Secretary of Labor's regulations" (internal citations omitted)).

> We conclude that the OPM definition of an "executive" employee is a reasonable interpretation of the Fair Labor Standards Act. As noted above, federal employees are subject to suspensions under Title V that are not applicable in the private sector. Under the interpretation urged by appellants, nearly every federal employee would be considered non-exempt because Title V applies to a vast majority of all federal employees. Because of the peculiar nature of the statutory framework surrounding federal employment, it is reasonable for OPM's regulation to vary from the Labor Department Standard. Moreover, in reviewing the OPM and Labor Department definitions, the regulations are nearly identical, but for the salary-basis test. Thus, the variance in OPM's regulation is no more than needed to accommodate the difference between private and public sector employment. We see no error in the determination by the Court of Federal Claims that the OPM regulation is a reasonable application of the Fair Labor Standards Act to the federal sector.

322 F.3d at 1334.

The principles announced in Billings were subsequently applied by Chief Judge Damich in Angelo v. United States, 57 Fed. Cl. 100 (2003). There the Court concluded that a greater executive authority in the area of hiring or discharge is a required component of the test under DOL's regulations for the executive exemption whereas the Federal Government's construction of the relevant OPM regulation "would have the Court find an employee exempt based merely on authority to promote or advance in pay." Id. at 114. The Court concluded that "[t]hus, in the context of executive employees, the OPM standard clearly sets out a broader opportunity for exemption (or, from Plaintiffs' perspective, a looser threshold) than the DOL regulations." Id.

The Court then concluded that "there is no apparent justification for why a federal employee should be considered an executive exempt from FLSA overtime requirements because of authority to recommend mere advancement in pay or promotion of subordinates, while a comparable private sector employee is required to demonstrate additional authority to recommend the more significant action of hiring or firing such subordinates." Id. The Court concluded that the OPM regulation had

to comply with DOL's regulation and that the Court would hear the parties' evidence regarding this component "as construed herein . . . at trial."[14/]

The incompatibility of the Federal Circuit's holding in Adams with DOL's construction of the FLSA is clear. DOL's current Field Operations Handbook contains a rule (albeit addressing ambulances), that makes clear DOL's position on home/work driving:

> In the ordinary case where an employer permits an employee to drive an ambulance to and from his home for the employee's own convenience, the time so spent is not hours worked. If the employee is required to take the ambulance home in order to respond to calls immediately, all the time spent in driving would be hours worked.

Wage and Hour Div., F.O.H. § 31d00(a)(5) (internal citation omitted) (emphasis added).

Plaintiff submits that consistency with DOL's position requires this Court to declare plaintiff's driving FLSA compensable. See Am. Fed'n of Gov't Employees v. Office of Personnel Management, 821 F.2d 761, 769-772 (D.C. Cir. 1987).

---

[14/] "In short, a demonstration of authority regarding hiring or firing is required. The Court will thus hear the parties' evidence regarding this component as construed herein, as well as the remaining component of the primary duty test, at trial." 57 Fed. Cl. at 114-15.

## VI. STARE DECISIS DOES NOT APPLY.

Defendant appears to contend that under the doctrine of stare decisis the Federal Circuit's Adams decision is dispositive. However, it is well-settled that at best "the doctrine of stare decisis applies to only legal issues and not issues of fact." Avenues in Leather v. United States, 423 F.3d 1326, 1331 (Fed. Cir. 2005). Thus, while stare decisis "makes each judgment a statement of the law, or precedent, binding in future cases, . . . [i]t deals only with law, as the facts of each case must be determined by the evidence adduced at trial. . . ." Mendenhall v. Cedar Rapids, Inc., 5 F.3d 1557, 1570 (Fed. Cir. 1993) (internal citation omitted). Thus plaintiff is fully entitled to present her factual and legal cases to this Court as well as to be able to distinguish this case from Adams on both facts and law.

Further, that the application of stare decisis is limited is reflected in a "Panel Discussion on Intra-Circuit Conflicts," which occurred in 2001 at the Third Bench and Bar Conference of the Federal Circuit Bar Association in which Federal Circuit Chief Judge Michel participated as a panelist. In the course of responding to a question, Chief Judge Michel stated the following:

> **Judge Michel** . . . We have a case, a predominant case about stare decisis and later panels being bound as Null, so sometimes people talk about the Rule of Null and en gros in the sort of first cut, a crude analysis, the Rule of Null is that later panels are bound by every decision of every earlier panel and that's right but it's not the end of the analysis. I would suggest to you that there are some subtler variations. So, let's call that Null 1 and I'm going to give you my personal version of Null 2, 3, and 4. These aren't real decisions but if you search around, I think you can find this in our precedent. Null 2 would be, if the later panel distinguishes, let's assume fairly, the apparently conflicting earlier decision, then the Rule of Null 1 does not apply. That is the second panel's decision can be different and it's legitimate. Null 3 would be where a Supreme Court case controls; it would trump the earlier panel so the later panel would be free to do what it did and it would be legitimate assuming that the analysis is fair and then Null 4, and this is the most controversial, and

> these are just my own ideas of course. Null 4 would be, if the earlier decision had no analysis, cited no authority, but just made a statement, a single sentence just declaring some proposition of law. The later panel has a lot more flexibility in that circumstance where it can provide principled reasons and can cite authority to go on a divergent path. So there are a lot more subtleties than just the iron law that the first case always trumps every later case. It's not that simple.

See 11 Fed. Cir. B.J. 623, 648-649 (2001).

In this case plaintiff submits that the law has changed since Adams on the basis of the Supreme Court's Coke and Brand X decisions so that Judge Michel's "Rule of Null 3" applies. Plaintiff thus submits that Adams does not "trump . . . every later case," and that it is also inapplicable based upon the unique and distinct facts presented in this case relating to home/work driving by DIs.

## VII. THE DENIAL OF PETITIONERS' PETITION FOR WRIT OF CERTIORARI AND PETITION FOR REHEARING EN BANC IN ADAMS DO NOT CONSTITUTE AFFIRMANCE OF THE FEDERAL CIRCUIT PANEL'S DECISION IN ADAMS.

That the denial of a petition for writ of certiorari provides no indication of the Supreme Court's views upon the merits of a case needs no explication. As the Supreme Court has consistently declared, "[t]he denial of a writ of certiorari imports no expression upon the merits of the case, as the bar has been told many times." United States v. Carver, 260 U.S. 482, 490 (1923). See Martin v. Texas, 382 U.S. 928, 929 (1965); Chessman v. Teets, 354 U.S. 156, 164 n. 13 (1957); Brown v. Allen, 344 U.S. 443, 491-492 (1953) (opinion of Frankfurter, J.).

Likewise, this is true of the Federal Circuit's denial of the Adams plaintiffs' Petition for Rehearing En Banc. Rule 35(a) of the Federal Rules of Appellate Procedure declares:

> (a) When Hearing or Rehearing En Banc May Be Ordered. A majority of the circuit judges who are in regular active service and who are not disqualified may order that an appeal or other

> proceeding be heard or reheard by the court of appeals en banc. An en banc hearing or rehearing is not favored and ordinarily will not be ordered unless:
>
> (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or
>
> (2) the proceeding involves a question of exceptional importance.

Accordingly, the denial of the Appellants' Petition for Rehearing En Banc in Adams may not be interpreted as reflecting approval of the panel's decision in Adams by the entire Federal Circuit.

Thus, plaintiff is entitled to litigate this case to a conclusion notwithstanding the Federal Circuit's decision in Adams. And she is entitled to do so based upon a full factual record.

## CONCLUSION

For the reasons set forth herein, plaintiff's Motion for Partial Summary Judgment on the "driving time" issue should be granted under RCFC 56(c) since there is no genuine issue as to any material fact and plaintiff is entitled to judgment as a matter of law.

Respectfully submitted,

OF COUNSEL:
Linda Lipsett

**s/Jules Bernstein**
Jules Bernstein (Counsel of Record)
Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile

Counsel of Record

**s/Edgar James**
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Attorneys for Plaintiff

Dated: July 31, 2008

**CERTIFICATE OF FILING**

I hereby certify under penalty of perjury that on this 31st day of July 2008, a copy of the foregoing "PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE "DRIVING TIME" ISSUE, PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT THEREOF, AND REQUEST FOR ORAL ARGUMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.